United States District Court
Southern District of Texas
**ENTERED**
May 23, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CADENCE BANK, f/k/a BANCORPSOUTH BANK, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:24-CV-869 |
| VS. | § § | |
| LAVEZZARI AND ASSOCIATES, INC., d/b/a ARTIX LUX, | § § § | |
| Defendant. | § § § | |

## <u>MEMORANDUM & ORDER</u>

Before the Court is Plaintiff Cadence Bank's Motion for Default Judgment against Defendant Lavezzari and Associates, Inc. ECF No. 10. For the below reasons, the Court **GRANTS** Plaintiff's Motion. However, the Court requires additional information before awarding damages, attorneys' fees, and costs.

### I.    BACKGROUND[1]

In October 2019, Defendant Lavezzari and Associates, Inc. ("Lavezzari") executed (1) a Note payable to Plaintiff Cadence Bank in the principal amount of $350,000; (2) a Loan Agreement governing the terms of the Note; and (3) a Commercial Security Agreement pledging its equipment, fixtures, and inventory as collateral. Pl.'s Compl. ¶¶ 5, 7, 9, ECF No. 1.[2] The Note

---

[1] Given that the clerk has entered default in this case, at this stage, the Court accepts as true all well-pleaded facts in the complaint, except those regarding damages. *See Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. CV H-16-35, 2016 WL 6436557, at *2 (S.D. Tex. Oct. 31, 2016) (citing *U.S. for Use of M–Co Constr., Inc. v. Shipco Gen.*, Inc., 814 F.2d 1011, 1014 (5th Cir. 1987)); *United States v. $99,350.00, More or Less, in United States Currency*, No. 1:21-CV-96, 2022 WL 432573, at *2 (S.D. Tex. Jan. 25, 2022), *report and recommendation adopted*, No. 1:21-CV-096, 2022 WL 425984 (S.D. Tex. Feb. 11, 2022) (same).

[2] The Complaint also alleges that Brian J. Lavezzari guaranteed the Note. Compl. ¶ 7 n.4. However, Plaintiff is not seeking relief against Mr. Lavezzari in the instant suit. *Id.*

provided that Lavezzari would repay the loan in consecutive monthly payments and that failure to do so would constitute a breach of the Note's terms. *Id.* at ¶ 6. It also provided that if Lavezzari missed any of its monthly payments, it would owe an additional late fee of up to 5% of the unpaid portion of the payment. *Id.* Further, the Loan Agreement contained an acceleration clause. *Id.* at ¶ 8.

On May 5, 2023, Defendant began missing its monthly payments. *Id.* at ¶ 10. On January 22, 2024, Cadence Bank notified Defendant that it had defaulted and that, if Defendant did not cure its default in ten days, all amounts outstanding under the Note would be accelerated. *Id.* at ¶ 11. After Defendant failed to cure its default, Cadence Bank sent a Notice of Acceleration. *Id.* at ¶ 13. Cadence Bank alleges that, as of March 5, 2024, Defendant owed $287,814.19,[3] calculated as: $258,314.60 in principal, $24,008.91 in accrued interest,[4] $3,757.52 in late charges, $1,733.16 in "other, non-legal fees and force-placed insurance premiums," with $80.72 in interest accruing per day thereafter. *Id.* at ¶ 14.

Cadence Bank filed a breach of contract claim against Lavezzari on March 8, 2024, seeking damages, costs, and attorneys' fees, as well as post-judgment interest on the forgoing amounts. *Id.* at ¶¶ 15–23. On April 1, 2024, Cadence Bank served the Complaint and Summons on Lavezzari via personal service of Brian Lavezzari, who confirmed that he was authorized to accept service on behalf of Lavezzari and Associates. *See* ECF No. 7. Lavezzari did not answer the complaint or file a responsive pleading in the time permitted by Rule 12(a)(1)(B), and, to date, has not entered an appearance. As such, the clerk of this Court entered default against Lavezzari on May 2nd,

---

[3] In what appears to be a typographical error, Cadence Bank's Complaint lists this figure as $287,804.19. Compl. ¶ 14. However, the total amount comes out to $287,814.19 if one adds the principal, interest, late charges, and fees that Cadence Bank alleges Defendant owed. *See id.*
[4] This reflects the amount of accrued interest as of March 8th, 2024. Compl. ¶ 14. The Motion for Default Judgment states that $29,013.75 of interest had accrued as of May 7, 2024. ECF No. 11 ¶ 11.

2024. ECF No. 9. Now, Cadence Bank seeks entry of default judgment against Lavezzari, pursuant to Federal Rule of Civil Procedure 55(b).

## II.     LEGAL STANDARD

In the Fifth Circuit, there are three steps to obtaining a default judgment: (1) default, (2) entry of default, and (3) default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* FED. R. CIV. P. 55(a)-(b).

> A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An *entry of default* is what the clerk enters when the default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a). After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*.

*New York Life Ins. Co.*, 84 F.3d at 141.

Here, Plaintiff has met the first two requirements for a default judgment against Lavezzari. The remaining question is whether the Court should enter default judgment. "Before default judgment can be entered, the plaintiff must submit evidence supporting that the defendant has been properly served." *America's Silver Collection, LLC v. Fabulous Fancy's LLC*, No. H-18-3806, 2019 WL 1003352, at *2 (S.D. Tex. Feb. 28, 2019). Without proper service, a district court lacks jurisdiction, and the default judgment is void. *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Further, default judgment motions "must be served on the defendant-respondent by certified mail (return receipt requested)." S.D. Tex. Local R. 5.5.

"The defendant's default is not treated 'as an absolute confession' of liability or 'the plaintiff's right to recover.'" *Wells Fargo Bank, N.A. v. Pantalion*, No. CV H-18-4215, 2019 WL 497726, at *3 (S.D. Tex. Feb. 8, 2019) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, "[b]y defaulting, a defendant 'admits the plaintiff's well-pleaded allegations of fact,'" which means that "[t]here must be a sufficient basis in the pleadings

for the judgment entered." *Id.* (quoting *Nishimatsu*, 515 F.2d at 1206). This means that default judgment may be entered if the complaint meets Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497–98 (5th Cir. 2015). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

## III.   ANALYSIS

### A.  Default Judgment

After reviewing Cadence Bank's Motion and the record in this case, the Court finds and holds that entry of default judgment is appropriate. First, Cadence Bank meets the procedural requirements for default judgment. Defendant has been properly served and has failed to file an answer or otherwise respond to Plaintiff's complaint. *See* ECF No. 7. And Plaintiff's counsel certified that Defendant was properly served with the Motion for Default Judgment. *See* ECF No. 10 at 5.

Next, Plaintiff's breach of contract allegations meet the Rule 8 standard for pleadings. In diversity cases such as this one, federal courts are obliged to apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "Texas courts

4

use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause." *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). A choice-of-law analysis is, of course, unnecessary absent a conflict between two bodies of law. *Contractor's Source Inc. v. Hanes Companies, Inc.*, No. CIV.A.09-CV-0069, 2009 WL 6443116, at *2 n.4 (S.D. Tex. Dec. 29, 2009) (Ellison, J.). But there is a conflict necessitating such an analysis here. This suit bears contacts with Mississippi and Texas. Mississippi law does not provide a statutory remedy for attorneys' fees in a breach of contract action, whereas Texas law does. *Infrasource Constr., LLC v. Sturgis Mat Co., Inc.*, No. 4:19-CV-2672, 2021 WL 1200891, at *4 (S.D. Tex. Feb. 26, 2021), *report and recommendation adopted sub nom. Infrasource Constr., L.L.C. v. Sturgis Mat Co., Inc.*, No. 4:19-CV-2672, 2021 WL 1198246 (S.D. Tex. Mar. 30, 2021). Thus, to assess whether Plaintiff is entitled to attorneys' fees, the Court must determine whether Texas or Mississippi bears the "most significant relationship" to the subject matter of this case. To apply this test to breach of contract suits, courts consider the following factors: "(a) the place of the contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the parties' domicile, residence, nationality, place of incorporation, and place of business." *Contractor's Source*, 2009 WL 6443116, at *2–3 (Ellison, J.) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 (1971)).[5]

The Court finds that Texas law applies in this case. While Plaintiff is a Mississippi corporation, Compl. ¶ 1, Defendant is a Texas corporation with its principal place of business in

---

[5] Courts also consider several policy factors, including: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 6 (1971).

Texas. Compl. ¶ 2. It therefore signed all relevant contracts from Texas, received the loan amount in Texas, and defaulted in Texas. *Cf. Infrasource Constr., LLC v. Sturgis Mat Co., Inc.*, No. 4:19-CV-2672, 2021 WL 1200891, at *4 (S.D. Tex. Feb. 26, 2021), *report and recommendation adopted sub nom. Infrasource Constr., L.L.C. v. Sturgis Mat Co., Inc.*, No. 4:19-CV-2672, 2021 WL 1198246 (S.D. Tex. Mar. 30, 2021) (applying Texas law to breach of contract case, reasoning in part that the place of performance and location of subject matter of the contract were in Texas). Policy considerations also weigh in favor of applying Texas law. *See Bonn Operating Co. v. Devon Energy Prod. Co., LP*, No. CIV A 4:06-CV-734-Y, 2009 WL 484218, at *7 (N.D. Tex. Feb. 26, 2009) (noting that "Texas courts have also recognized that applying the law of the forum fosters certainty, predictability, and uniformity, if for no other reason than the forum court's familiarity with the forum's law and that Texas "ha[s] an interest in protecting [its] resident's reasonable contract expectations"), *on reconsideration in part*, No. 4:06-CV-734-Y, 2009 WL 10677307 (N.D. Tex. Apr. 21, 2009), *and aff'd sub nom. Bonn Operating Co. v. Devon Energy Prod. Co., L.P.*, 613 F.3d 532 (5th Cir. 2010).

In Texas, the elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)). Cadence Bank has met each element in this case. Its complaint alleges that (1) a valid contract exists; (2) pursuant to the agreement, Cadence Bank loaned Defendant $350,000; (3) Defendant failed to pay Cadence Bank its monthly installments pursuant to the contract; and (4) as a result of Defendant's default, Cadence Bank suffered damages. *See* Compl. ¶¶ 5–14. The Court, therefore, **GRANTS** Plaintiff's Motion for

Default Judgment.

### B. Damages, Attorneys' Fees, and Costs

Though the Court finds it appropriate to enter Default Judgment against Defendant, it requires additional briefing in order to assess its award of damages, attorneys' fees, and costs.

First, it is not readily apparent from Plaintiff's Motion how it calculated the amount owed in accrued interest. In its supplemental brief, Plaintiff should explain its underlying calculations related to the total amount owed in accrued interest, and the $80.72 *per diem* accrual.

Second, the Court requires more detailed information about the amount of time Plaintiff's attorneys spent on specific tasks in this suit, such that the Court may meaningfully review the fee application.[6] "A meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). At present, the submitted affidavit does not provide the Court with adequate information to assess whether the hours expended are reasonable. *See* Pl.'s Ex. B, ECF No. 10-2. The Supreme Court of Texas has "condemned 'generalities about tasks performed' and specifically said that, 'without any evidence of the time spent on specific tasks,' the trial court does not have sufficient information to meaningfully review the fee application." *Sullivan v. Abraham*, 488 S.W.3d 294, 299–300 (Tex. 2016) (citing *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014)); *see also City of Laredo v.*

---

[6] *Some award of attorneys' fees is appropriate in this case. The question is what specific *amount* is appropriate to award. "It is well-settled in the Fifth Circuit that entitlement to attorneys' fees in diversity cases is a matter of substance governed by state law." *Wavelinq, Inc. v. JDS Lightwave Prod. Grp., Inc.*, No. 3:01-CV-1752-N, 2005 WL 8158029, at *2 (N.D. Tex. Aug. 17, 2005), *aff'd in part, rev'd in part and remanded on other grounds*, 289 F. App'x 755 (5th Cir. 2008) (citing *Grant v. Chevron Phillips Chemical Co.* 309 F.3d 864, 875 n.37 (5th Cir. 2002)). Therefore, Texas law governs the issue of attorneys' fees. *See id.* Texas law provides for an award of reasonable and necessary attorneys' fees to a party prevailing on a claim for breach of contract, so long as there is evidence indicating that such fees are reasonable and necessary. *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App. 2017) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)).

*Montano*, 414 S.W.3d 731, 736 (Tex. 2013) ("[A] lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work."). Invoices or affidavits detailing the amount of time each attorney spent on the tasks listed in paragraph 9 of Joshua Lesser's affidavit would help the Court meaningfully review Plaintiff's request for attorney fees.

Lastly, Plaintiff's fee application lists both billed and unbilled hours for several attorneys. Pl.'s Ex. B ¶ 10, ECF No. 10-2. The Court requests that Plaintiff provide authority for the proposition that the Court may award attorneys' fees for unbilled hours, in addition to billed hours.

## IV.   CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Default Judgment. ECF No. 10. The Court **ORDERS** Plaintiff to supplement the record as set forth above. Plaintiff may submit a supplemental brief, as well as additional exhibits and/or affidavits, by **Thursday, May 30, 2024**.


**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 22nd day of May, 2024.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE